J-S16029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.L.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1315 MDA 2021 |

Appeal from the Decree Entered August 31, 2021,
in the Court of Common Pleas of Tioga County,
Orphans' Court at No(s):  67 OC 2020.

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JULY 15, 2022**

In this matter, A.D. (Mother) appeals the decree issued by the Tioga County Court of Common Pleas, which terminated her rights to 8-year-old son D.L.D. (the Child), pursuant to the Adoption Act. *See* 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).  Additionally, Counsel for Mother has filed an application to withdraw and a brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  After review, we affirm, and grant Counsel leave to withdraw.[1]

The record discloses the following factual and procedural history:  The Child was born in March 2013.  The parents' relationship was tumultuous,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the rights of G.R. (Father), who did not appeal.

involving several separations and reconciliations. The orphans' court noted "significant indications" that domestic violence occurred between the parents, as evidenced by prior proceedings under the Protection From Abuse Act. *See* Trial Court Opinion, 8/31/21 (T.C.O.) at 3.

In 2018, the Tioga County Department of Human Services (the Agency) commenced an investigation and provided services to the family. The Agency eventually petitioned for dependency due to concerns about Mother's mental health, the truancy of the Child, and the Mother's refusal to cooperate with the Agency's offered services. In May 2019, the court adjudicated the Child dependent, but allowed the Child to remain in Mother's physical custody. In August 2019, the police responded to another incident of domestic violence, which led to criminal charges against Father. After this incident, the court subsequently removed the Child from the home.

In its Rule 1925(a) opinion, the orphans' court described how Mother's lack of progress lead to the termination of her parental rights:

> Throughout the life of this case [the Agency] has provided services to Mother including but not limited to: visitation, parenting in the form of STEPs [(Systemic Training for Effective Safe Parenting)] and ESP [(Effective Safe Parenting)], advice and assistance regarding the Child's medical care and medical conditions, mental health evaluations and services to Mother and the Child. Mother has at times met with service providers, but had made little or no progress, and is often argumentative. […] Mother has repeatedly indicated that only her ways are appropriate in dealing with the Child. […][V]ery recently, after the filing of the Petition, Mother had begun to cooperate and meet with [service providers]. Mother's declination to accept or apply services and skills is further corroborated by the testimony

of visitation staff, and the caseworker[.] The court notes Mother has attended visitation throughout the Child's placements. These visits have been supervised. The visits have sometimes been disrupted by Mother's actions and have, on occasion, required the intervention of staff; including on at least on[e] occasion. Mother has made improper statements about the Child's Father, about service providers, about the foster parents, and others in the presence of the Child during visitation. She has whispered things to the Child despite instructions to the contrary in an effort to conceal conversations and interactions from visitation staff. Additionally, she has made promises to the Child regarding his return to home, and other matters. It is noted by visitation staff that Mother has failed to apply parenting skills as offered, often declining to discipline or correct the Child. Due to safety concerns Mother's visits have remained supervised throughout the life of this case.

Mother has undergone evaluations including a psychological with Dr. McNamara, and a psychiatric evaluation with Dr. Grigg. Recommendations for counseling have been made, and Mother indicates she attends counseling with a therapist. [The Agency] has been unable to verify Mother's actual attendance, or any information related to her treatment plan or progress. Dr. Grigg testified that Mother likely suffers from a delusional disorder, and that the focus of this disorder is upon the Child's purported, but unsupported medical conditions. [Mother's] condition continues to exist, and based upon the testimony of Dr. Grigg, it unlikely to improve without substantial change by Mother.

The Child, since physical custody was placed with the [Agency], has resided in several foster homes. The Child has unfortunately been removed from foster homes due to behaviors[ w]hich made him unmanageable in the respective homes[,] leading to a request from the families that he be removed. The Child's current placement has been in place for a substantial period of time, and the Child seems to be well-settled within the [pre-adoptive foster home]. The Child is currently enrolled in a partial program at the [Elementary School] where he receives academic instruction in a structured setting, which also provides mental health services. The Child has at times struggled in the partial program, initially engaging in disruptive

behaviors, and aggression towards other students. The Child has recently made significant progress in controlling his behaviors and may be considered for transfer to direct educational services within the main instructional program of the Elementary School.

T.C.O. at 3-4 (capitalization adjusted)

Moreover, we note that the orphans' court made additional findings:

- Mother has made little progress in any of the provided services, and at times has refused to meet with providers.

- Dr. Grigg upon evaluation of Mother noted a probably delusional disorder, as well as an unspecified neurocognitive disorder, and borderline intellectual functioning.

- The child's counselor, Heather Doran, testified that the bond between the Mother and the Child is an "unhealthy" one.

- Mother has been inconsistent in her contact with the school.

- Mother has been inconsistent in her contact with the Child's counselor.

- Mother has presented inaccurate testimony in various proceedings, including for example, that the Child has suffered an adverse reaction to a suggested medicine. Upon further investigation no medical record can be found that indicates the Child previously received the medication. Further, Mother has repeatedly stated she was ordered by the court to allow the Child's Father to move in with her, which is not supported in the record.

*See* T.C.O. at 1-2 (Findings of Fact).

The Agency petitioned to terminate Mother's rights pursuant to 23 Pa.C.S.A. § 2511(a)(1),(2), (5), (8) and (b). The orphans' court conducted a

hearing over the course of seven days between April and June 2022. By decree of August 31, 2022, the court granted the Agency's petition, although not under Section 2511(a)(1), which the Agency decided not to pursue at the hearing. Mother appealed.

Before we address her appeal, we note that Mother's Counsel has filed a petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[2] To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

> With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

**In re J.D.H.**, 171 A.3d at 903, 907 (Pa. Super. 2017) (citations omitted).

Additionally, Counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in **Santiago**:

> (1) provide a summary of the procedural history and facts, with citations to the record;

---

[2] This Court extended the **Anders** principles to appeals involving the termination of parental rights. **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

- 5 -

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).

Preliminarily, we find that Counsel has substantially complied with the technical requirements to withdraw.[3] *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the *Anders* requirements is sufficient).

In addition to verifying that Counsel substantially complied with *Anders* and *Santiago*, this Court also must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). *Flowers* does not require us "to act as counsel or otherwise advocate on behalf of a party." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). "Rather, it requires us only to

_____

[3] We note that Counsel originally neglected to file a separate petition to withdraw as counsel or a letter advising Mother of her rights pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005). This Court entered an order on March 14, 2022, directing counsel to comply. Counsel complied and filed a petition to withdraw as counsel and a copy of the *Millisock* letter on March 21, 2022. The *Millisock* letter indicates that Appellant was served a copy of all the documents.

conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Id.* Traditionally, we would start our review by giving "a most generous reading and review of 'the case' as presented in the entire record with consideration first of issues raised by counsel." *See id.* (citing *Anders*, 386 U.S. at 744).

Before we conduct our independent review, we first address the issues Counsel presents in the *Anders* Brief that arguably support Mother's appeal. *See M.C.F.*, 230 A.3d at 1219. The three issues presented are as follows:

1. Did the orphans' court abuse its discretion by determining that the Agency established that Mother made no progress toward providing adequate parental care for [the Child], where Mother did not meaningfully comply with Systemic Training for Effective Safe Parenting (STEPS) or Effective Safe Parenting (ESP) programs?

2. Did the orphans' court abuse its discretion in determining that the conditions which led to the removal or placement of the Child continued to exist and that the termination of the parental rights of Mother would best serve the needs and welfare of the Child?

3. Did the orphans' court abuse its discretion in determining that the parental bond with the child was not positive, that the removal the Child continued to exist, and that the termination of the parental rights of Mother would best serve the needs and welfare of the Child?

*Ander's* Brief at 8-9 (cleaned up).

We review these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact

and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Here, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any

proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201(Pa. Super. 2000) (*en banc*).

As we need only agree with the orphans' court as to one subsection of Section 2511(a), we analyze whether the Agency properly established grounds for termination under Section 2511(a)(2), which corresponds with Mother's first appellate issue. That section provides in relevant part:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re C.M.K.***, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. ***In re Z.P.***, 994 A.2d 1108, 1117

(Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. ***Id.***

Here, the orphans' court determined that Mother's incapacity and/or her refusal to parent has caused the Child to be without parental care, and that Mother cannot or will not remedy the causes of her incapacity and/or refusal to parent:

> The conditions leading to removal of the Child from Mother's care specifically included: significant mental health concerns which led to inappropriate actions, subjecting the Child to extensive, repeated, and ultimately unnecessary health evaluations and procedures. These efforts combined with the failure or refusal of Mother to obtain required vaccinations, resulted in the Child being frequently absent from school, and a truancy action. [Mother's] actions were, as ultimately noted by Dr. Grigg, driven by Mother's delusions. Mother, following the dependency determination, has rejected efforts to provide her with medical liaisons and supports. She has persisted in delusional statements, and provided inaccurate medical histories to providers, the [Agency], and the court. Mother's actions cannot be simply characterized or considered a reasoned difference of opinion, but instead reflect an absolute refusal to consider any advice, input, diagnosis, or treatment other than her own. Nor can they be dismissed as harmless to the Child.
>
> The Child has undergone numerous evaluations and examinations, has been shuffled from doctor to doctor, and facility to facility, in search of what Mother deems a sufficient diagnosis. These efforts have kept the Child from school, interfering with both his education, and supportive services that were provided within the school. Following dependency, Mother has continued to be argumentative and disruptive, and her conduct has resulted in delayed treatment for the Child's actual conditions. Mother's argumentativeness extends beyond meetings with service providers, and includes her interactions in medication management meetings through the partial program, and with the school. The court specifically notes that Mother has

provided unfounded testimony that her Child is allergic to a suggested medication, testimony which is not support by and of the Child's providers or medical records.

The treatment prognosis relating to Mother's mental health which drives these behaviors is not positive. Dr. Grigg opined that this is a persistent condition that is unlikely to improve without Mother's commitment to substantial sustained treatment, and may ultimately never be fully resolved.

T.C.O. at 5 (capitalization adjusted).

Upon our review, the orphans' court properly determined that the Agency established grounds under Section 2511(a)(2) by clear and convincing evidence. Thus, we need not address Mother's second *Anders* issue, regarding termination under Section 2511(a)(5) or (a)(8). Having established the first prong of the termination analysis, we turn now to the second.

In her third *Anders* issue, Mother argues the orphans' court abused its discretion when it found that termination best served Child's needs and welfare. Section 2511(b) provides:

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

- 11 -

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. *Z.P.*, 994 A.2d at 1121. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when

determining what is in the best interest of the child." ***In re N.A.M.***, 33 A.3d

95, 103 (Pa. Super. 2011) (citation omitted).

Instantly, the orphans' court determined that while Mother and the Child

share a bond, the bond was an unhealthy one, and that, notwithstanding the

existence of this bond, termination best served the Child's needs and welfare:

> Immediately it must be noted that the Child has repeatedly expressed to numerous individuals that he ultimately wishes to return with Mother. This position has also been advocated throughout this proceeding by his legal interest attorney [appointed under 23 Pa.C.S.A. § 2313(a)]. It is clear the Child is connected and bonded with his Mother. While no formal bonding assessment was conducted, it is obvious that a decision to terminate Mother's rights will have an immediate negative impact on the Child. Further, given the Child's age this impact may extend over a period of time, well beyond the simple end of his in-person [visits] with Mother.
>
> However, the Child's bond and the impact of the termination, even if it is negative, is not the sole consideration in weighing the Child's best interests. Additionally, the court is aware that the mere existence of a bond may be either negative, or positive. The court notes and accepts as credible the testimony [of] the Child's counselor Heather Doran that the bond in this case is an "unhealthy" bond. This position and the court's opinion is further supported by testimony regarding the Child's reaction following visits with Mother. The court must also consider the impact of perpetuating the current state. As discussed above, there is no evidence to support that Mother will take the necessary steps to allow safe reunification between herself and the Child at any reasonably foreseeable date. The absence of permanency, and the lack of opportunity to establish meaningful lasting and healthy relationships is a threat to both the Child's immediate and long-term health and well-being. The Child is entitled under the law to permanency. The Child has the opportunity for that in his current placement with the [current pre-adoptive foster parents]. The [foster parents]

have now supported the Child for a substantial period of time, including through transition to the partial program. The [foster parents] have directly indicated a willingness to adopt the Child if the opportunity exists, and are willing to provide permanency. The [foster parents] are familiar with the Child's needs and have demonstrated both the ability and willingness to meet them.

In considering the Child's ultimate best interest, the admittedly substantial loss he will suffer by a grant of the [termination] petition is outweighed by the advancement of his long-term stability. Which is particularly true in the circumstances presented here, where the parent has made at best minimal progress over a period that now exceeds two years.

T.C.O. at 8-9.

After review, we conclude the court did not abuse its discretion when it found that termination would best serve the Child's needs and welfare under Section 2511(b), notwithstanding the existence of a parental bond.

Finally, we must conduct our independent review to discern whether there are any additional, non-frivolous issues overlooked by counsel, pursuant to ***Flowers***, 113 A.2d at 1250. Although we raise no other matter, we use this opportunity to make one clarification. Under Section 2511(a)(2), the "incapacity" question did not turn on whether Mother has mental health issues, or even whether those mental health issues were "persistent;" the issue is whether Mother's incapacity has caused the Child to be without parental care. Here, Mother's mental health issues, coupled with her refusal to treat those issues, have jeopardized the Child's well-being. Upon a "generous" review of the record, we discover no other issues of arguable merit. ***See Dempster***, 187 A.3d at 272.

- 14 -

Decree affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2022